Richardson, J.,
delivered the opinion of the court:
John Davis was a captain in the Ninth Pennsylvania Regiment in the Army of the United States, to rank from the 15th day of November, 1776. He continued in service to the end of the war of the Revolution, and thereby became entitled to half pay for life under a resolution of the Continental Congress of October 21,1780, which was as follows:
“ ResolvedThat those officers who shall continue in the service to the end of the war shall be entitled to half pay for life, to commence from the time of their reduction.”
Captain Davis died in 1827, and after his death the administrator of his estate applied to Congress for the commutation to which he appeared to have been entitled by law. The Committee on Revolutionary Claims of the House of Representatives of the Thirty-first Congress (1850) reported favorably on the application, and made this statement of the case :
“ There is no evidence that Captain Davis ever applied for or received his commutation or bounty-land. He was a highly respectable man, and his pecuniary circumstances were such as not to make it necessary for him to avail himself of the provisions made by his country for those who, like himself, had served her in the hour of need; and with a patriotic feeling of independence he abstained from making the claim during his life-time. He had married a daughter of John Morton, one of the signers of the Declaration of Independence, and was for *287 many years an associate judge of the courts in Chester County, Pennsylvania. After his death, which took place about the 1st of September, 1827, his family became reduced in pecuniary condition, and now feel justified in calling for what is justly due from the Government. The committee, upon a careful examination of the subject, find that the caséis brought within the resolves of Congress granting commutation and bounty.”
And the committee reported a bill accordingly. This bill was not acted upon at that time. Subsequently the claim was again before the Thirty-third Congress, was reported upon favorably, as before, by the Committee on Bevolutionary Claims at the first session, and a bill granting commutation was passed by the House of Bepresentativesat the second session of that Congress, but was not considered by the Senate.
Subsequently, and before the expiration of the three years allowed to parties by the Act March 3,1863, (12 Stat/L., 765, § 10,) during which time they might bring actions upon claims which had accrued six years before the passage of that act, the same administrator filed his petition in this court to recover the amount alleged to be due, and thus the case comes to us for adjudication. When- proceedings were commenced in this court it became the duty of the Attorney-General and his assistants to investigate the matter and ascertain and present any defense which might be discovered. Mr. McCammon, of the Attorney-General’s Office, to whom the immediate charge of the case was assigned, proceeded to look up the evidence. It appears that Captain Davis was during his life-time a member of the Society of the Cincinnati, at Philadelphia, and the rolls of that society were examined and Davis’ signature found. Search was then made in the office of the auditor-general of the State, and there were discovered u retiring officers’commutation-rolls,” with the name of John Davis, among others, signed thereto, acknowledging the receipt from the agents of the late Pennsylvania line of the sum set opposite his name, in certificates, dated July 1, 1784, bearing interest at 6 per cent, from March 22, 1783, signed by John Pierce, commissioner, for the balance of a settlement between the United States and said Davis (with others) for commutation of five years’ full pay in lieu of half pay for life. A comparison of the signature of John Davis to this roll with that of John Davis in the records of the Society of *288 the Cincinnati shows that they are in the same handwriting, and that is admitted by the claimant.
It appears from the records of the Register’s Office of the Treasury Department that these certificates so issued to' Captain Davis were redeemed and settled by the United States, although the original certificates were destroyed at the time of the burning of the Treasury building in 1814.
These certificates were issued and their commutation and settlement made under the following resolve of Congress, passed March 22,1783:
“ Resolved, That such officers as are now in service, and shall continue therein to the enci of the war, shall be entitled to receive the amount of five years’ full pay in money, or securities on interest at 6 per cent, per annum, as Congress shall find most convenient, instead of the. half pay promised for life by the resolution of October 21,1780, the said securities to be such as shall be given to other creditors of the United States: Provided, It be at the option of the lines of the respective States, and not of officers individually in those lines, to accept or refuse the same.”
The receipt and acceptance of these certificates, and payment of the same by the United States, constitute a complete bar, legal and equitable, to the claim, under the resolution of 1780, to half pay for life, on account of Captain Davis having continued in service to the end of the war, which is the subject of this action.
We may add that we are fully satisfied that this claim was presented to Congress and has been prosecuted in this court in perfect good faith on the part of the family and administrator of Captain Davis and their counsel, and that neither of them knew or had any reason to suppose that Capt. John Davis had commuted and settled his claim for half pay for life until the evidence, clear and conclusive, was discovered by the vigilance of Mr. McCammou.
The claimant’s petition is therefore dismissed.
The Chief-Justice was not present when this case was submitted, and took no part in the decision.